UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MICHAEL BAPTISTA, JOSHUA IZZI,
KEVIN FARLEY, JOSEPH ZAMBARANO, and
MARK EVANS,
          Plaintiffs,

v.                                                   CR. No. 11-469 ML

THE TOWN OF NORTH PROVIDENCE, by
and through its Public Safety Commissioner, and
THE NORTH PROVIDENCE TOWN COUNCIL,
          Defendants.

## DECISION AND ORDER

Plaintiffs, Michael Baptista, Joshua Izzi, Kevin Farley, Joseph Zambarano, and Mark Evans (collectively "Plaintiffs") seek declaratory and injunctive relief against Defendants, the Town of North Providence ("Town") and the North Providence Town Council (collectively "Defendants"). Plaintiffs ask that the Court issue an order restraining Defendants from hiring individuals not listed on a 2007 North Providence Fire Department Training Academy hiring list. Plaintiffs allege that Defendants' decision to discard the 2007 North Providence Fire Department Training Academy hiring list violates the due process clause of the Fourteenth Amendment and constitutes a breach of contract under Rhode Island law.

### I. Background

Plaintiffs applied for and were accepted into the 2007 North Providence Fire Department Training Academy ("Academy"). Prior to their acceptance into the Academy, each Plaintiff was

1

required to submit a physician's statement that he was medically certified to engage in a physical performance assessment. In addition to providing the physician's statement, Plaintiffs also had to pass (1) a written examination, (2) an oral examination, (3) a physical performance assessment ("PPA"), (4) a swim test, and, (5) a ladder climb test. The Academy operated from six to ten p.m. three nights per week and all day on Saturdays for approximately two and a half months. Plaintiffs were not compensated by the Town during their attendance at the Academy. The Academy concluded on March 31, 2007. All Plaintiffs successfully completed and graduated from the Academy. Upon graduating from the Academy, the names of individual graduates were placed on a hiring list according to the grade achieved at the Academy, with the individual who achieved the highest grade being ranked first on the list. Individuals would then be hired, as needed by the Town, from the list according to their rank on the list.

Plaintiffs testified that they were told by unidentified senior members of the North Providence Fire Department ("NPFD") that the Town always hired individuals off the list of graduates until the Academy list was exhausted. During the first or second day of the 2007 Academy, however, each of the Plaintiffs in this action signed an "[a]cknowledgment." Plaintiffs were told that if they did not sign the acknowledgment form they could not remain in the Academy. The form is reproduced here in its entirety:

> I, _____, do hereby acknowledge, accept, and fully understand that my selection, attendance, and successful completion of the North Providence Fire Department Training Academy in no way guarantees me future employment with the Town of North Providence as a firefighter. Moreover, I have been advised and understand that successful completion of the North Providence Training Academy is another phase of the hiring process and my successful completion is merely a factor to be considered among other factors by the Town of North Providence in the hiring process.
> Furthermore, I have been advised that the Town of North Providence

retains the right to hire new firefighters as needed based upon financial and public safety concerns as determined solely within the discretion of the Town of North Providence.

Exhibits A-5, B-5, C-5, D-5, and E-5.

Between October 2007 and May 2008, 11 graduates of the 2007 Academy were hired from the list. The last individual hired from the 2007 list was hired in May 2008. In March of 2011, after having served as the Acting Chief for one year, Leonard Albanese ("Albanese") became Chief of the NPFD. Soon after he became Chief, Albanese decided to hold a new Academy. Albanese testified that the reasons he chose to hold a new Academy were because the requirements for the PPA had changed in 2009 and because the 2007 Academy was not sanctioned by the Rhode Island State Fire Academy ("RISFA"). Albanese also wanted to use current information, instead of information gathered in 2007, to more accurately identify and evaluate the best firefighter candidates. RISFA certification was important because participants who completed a training program under the direction of RISFA received a National Fire Protection Association ("NFPA") standard level 1 and 2 certification. Albanese testified that NFPA certification was important because firefighters needed level 1 certification in order to take advanced firefighter educational classes and because NFPA certification was an important requirement when the NPFD applied for federal grants.

As a result of Albanese's decision to hold a new Academy, the NPFD advertised the 2011 Academy. One hundred and ninety-eight people, including four of the Plaintiffs in this case, applied. Mr. Evans did not apply. Mr. Izzi's application, however, was deemed incomplete and he was therefore disqualified. The three remaining Plaintiffs did not pass the written examination. Thus, none of the Plaintiffs have been accepted into the 2011 Academy.

3

Albanese testified that the Town held Academies in 1999, 2005, and 2007. He testified that those individuals on the 1999 list who wished to be employed by the Town were eventually hired within a time span of approximately five years. Those individuals on the 2005 list who wished to be employed by the Town were hired within a time span of approximately eighteen months.

## II. Analysis

The Court now proceeds to consider Plaintiffs claims against the backdrop of the analytical framework for claims for injunctive relief.[1] The four criteria for the grant of a preliminary injunction are well settled: "1) a likelihood of success on the merits, 2) irreparable harm to the plaintiff should preliminary relief not be granted, 3) whether the harm to the defendant from granting the preliminary relief exceeds the harm to the plaintiff from denying it, and 4) the effect of the preliminary injunction on the public interest." Rivera-Feliciano v. Acevedo-Vila, 438 F.3d 50, 63 (1st Cir. 2006) (internal quotation marks and citation omitted). The "sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Services, Inc. v. SprintCom, Inc., 287 F. 3d 1, 9 (1st Cir. 2002). "Where, as here, the action has been consolidated – allowing the parties a full opportunity to present the merits of their cases – and permanent injunctive relief is involved, the standard of review is essentially the same except that the movant must show actual success on the merits rather than a mere likelihood." Diva's, Inc. v. City of Bangor, 21 F. Supp. 2d 60, 63

---

[1] Plaintiffs' requests for preliminary and permanent injunctive relief were consolidated for hearing and disposition by agreement.

4

(D. Me. 1998).

## A. Due Process

To succeed on a procedural due process claim Plaintiffs must "demonstrate that they have a property interest as defined by state law and that the [D]efendants deprived them of this property interest without constitutionally adequate process." Garcia-Rubiera v. Fortuno, 2011 WL 6004615 at *7, ___ F.3d ___, ___ (1st Cir. 2011) (internal quotation marks and citation omitted). In order to establish a constitutionally recognized property interest, Plaintiffs must demonstrate that by completing and graduating from the Academy they had a legally cognizable expectation of employment. See generally Alberti v. University of Puerto Rico, 2011 WL 4863956, ___ F. Supp. 2d ___, ___ (D.P.R. 2011). A legitimate expectation of employment "may derive from a statute, a contract provision, or an officially sanctioned rule of the workplace." 2011 WL 4863956 at *6, ___ F. Supp. 2d at ___.

In order to satisfy their burden of showing a legitimate expectation of employment, Plaintiffs point to past practices of the Town, noting that the 1999 Academy hiring list lasted for approximately five years. That argument, however, only gets Plaintiffs so far. By contrast, the 2005 Academy hiring list lasted less than two years. Moreover, Plaintiffs point to no regulation or official practice that would require the Town to hold the 2007 list open for five years.

Plaintiffs also point to the statements of unnamed senior members of the NPFD who informed Plaintiffs that it was past practice of the Town to hire from the list until the list was exhausted. Unfortunately for Plaintiffs, the acknowledgment they signed belies any reasonable reliance Plaintiffs could base on the alleged past practices of the Town as reported by the unnamed senior members of the NPFD. Plaintiffs were clearly and unambiguously informed that

their successful completion of the Academy "in no way guarantees . . . future employment with the Town of North Providence as a firefighter." Exhibits A-5, B-5, C-5, D-5, E-5. Plaintiffs also acknowledged that completion of the Academy was just "another phase" in the hiring process and that "successful completion" of the Academy was only one factor in that process. Id. Moreover, Plaintiffs acknowledged that the Town retained the right to hire new firefighters based upon the financial and public safety concerns of the Town as determined "solely" by the Town. Id. When the acknowledgment is juxtaposed against Plaintiffs' asserted reliance on past practices of the Town, Plaintiffs' reliance was certainly not reasonable and could not create a constitutionally protected property interest.

Plaintiffs next rely on the holding in Ardito v. City of Providence, 263 F. Supp. 2d 358 (D.R.I. 2003). Ardito, however, is readily distinguishable. In Ardito, the police academy applicants had received a written conditional offer of employment. Id. at 364. In this case, there was no conditional offer of employment. To the contrary, the Town made it *unequivocally* clear, through the acknowledgment, that Plaintiffs' attendance and successful completion of the Academy in no way guaranteed future employment with the Town as a firefighter.

Plaintiffs also argue that the Town's requiring Academy applicants to provide a physician's statement that they were medically cleared to perform the PPA equates to a pre-employment medical examination under 42 U.S.C. § 12112(d)(2)(A), thus transforming the Town's actions into a conditional offer of employment. This argument is a non-starter. Plaintiffs were free to go to any physician to secure the statements. This requirement was not the type of medical examination that employers can require only after making a conditional offer of employment. See generally Ardito, 263 F. Supp. 2d at 366.

6

## B. Contract Claim

In order for parties to formulate a contract under Rhode law, there must be a valid offer. Weaver v. American Power Conversion Corp., 863 A.2d 193 (R.I. 2004). As noted above, the Court finds that Defendants did not make any offer of employment to Plaintiffs, conditional or otherwise. Thus Plaintiffs cannot show that there was a valid contract. Without a contract, Plaintiffs' breach of contract claim is a non-starter.

## III. Conclusion

Because Plaintiffs have not met their burden of establishing either a legitimate expectation of employment or an offer of employment, the Court finds that Plaintiffs have not shown any likelihood of success on their federal and state claims.[2] Accordingly, Plaintiffs' motion for preliminary and permanent injunctive relief is denied. The Clerk is directed to enter judgment for the Defendants.

SO ORDERED.

/s/ Mary M. Lisi
Mary M. Lisi
Chief United States District Judge
December 9, 2011.

---

[2] Because Plaintiffs cannot show a likelihood of success on the merits, the Court need not engage in an analysis of the remaining injunctive relief factors. New Comm Wireless Services, Inc., 287 F. 3d at 9.